## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ———————————————————— | : | |
| WILMAR TRADING PTE LTD, | : | |
| PT WILMAR BIOENERGI INDONESIA, and | : | |
| WILMAR OLEO NORTH AMERICA LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| and | : | |
| | : | |
| P.T. MUSIM MAS and GOVERNMENT OF THE | : | |
| REPUBLIC OF INDONESIA, | : | |
| | : | |
| Consolidated Plaintiffs, | : | |
| | : | |
| v. | : | Consol. Court No. 18-00121 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| NATIONAL BIODIESEL BOARD FAIR | : | |
| TRADE COALITION, | : | |
| | : | |
| Defendant-Intervenor. | : | |
| ———————————————————— | : | |

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs Wilmar Trading Pte Ltd., PT Wilmar Bioenergi Indonesia, and Wilmar Oleo North America LLC ("Wilmar") respectfully submit this Notice of Supplemental Authority concerning a recent decision of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in *Nexteel Co., Ltd. v. United States*, Ct. Nos. 2021-1334, 2021-1430, 2022 WL 728512 (Fed. Cir. Mar. 11, 2022).  *Nexteel* bears directly on, and fully supports, Wilmar's arguments regarding the U.S. Department of Commerce's ("Commerce") unlawful and unsupported findings of a particular market situation ("PMS") in the challenged final determination.  *See Biodiesel from*

*Indonesia: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 8,835 (Dep't of Commerce Mar. 1, 2018) ("*Final Determination*"), and the accompanying Issues and Decision Memorandum ("IDM") (P.R. 303).  For the reasons provided below, the Court should hold that neither the law nor substantial evidence supports Commerce's PMS findings.

*Nexteel* establishes bright line rules that govern how Commerce exercises its PMS authority.  With respect to a cost-based PMS, the Federal Circuit held that Commerce "must" conclude that (1) "the cost incurred to produce the subject merchandise 'does not accurately reflect the cost of production in the ordinary course of trade,'" and (2) "the circumstances supporting" the PMS finding are "'particular' to producers of the subject merchandise during the relevant period." *Nexteel*, 2022 WL 728512, at *3 (quoting 19 U.S.C. § 1677b(e)).  However, "{a}n ongoing global phenomenon would not alone constitute a deviation from the 'ordinary course of trade'" for purposes of a cost-based PMS finding.  *Id.*  Instead, substantial evidence must demonstrate that "some circumstance distorts costs so that they are not based on normal market forces or do not move with the rest of the market."  *Id.* at *4.

Applying these bright line rules to the PMS finding at issue in *Nexteel*, the Federal Circuit held that Commerce failed to support with substantial evidence its finding of a cost-based PMS. *Id.* at *3–7.  The Federal Circuit stated that Commerce could not rely on mere government intervention—in the form of subsidization of inputs to the subject merchandise—as evidence of market distortion without a factual nexus between the finding of subsidization and the cost of the input under review.  *Id.* at *4–5.  The Federal Circuit explained that "the subsidies must be shown to affect the price of the input so that it does 'not accurately reflect the cost of production in the ordinary course of trade.'"  *Id.* at *5 (quoting 19 U.S.C. § 1677b(e)).  Because "Commerce made no such finding that any subsidies were passed through to the prices of {the input}," the Federal

Circuit concluded that substantial evidence did not support Commerce's cost-based PMS finding. *Id.*

*Nexteel* confirms that neither the law nor substantial evidence supports Commerce's two PMS findings in the *Final Determination*.  In the underlying investigation, Commerce jettisoned all of Wilmar's home market biodiesel sales and almost all of Wilmar's reported costs because of the alleged distortion caused by two supposed bases for a PMS in Indonesia during the period of investigation.  Commerce found a PMS with respect to Wilmar's home market biodiesel sales based on the existence of a Public Service Obligation ("PSO") program administrated by the GOI, which required biodiesel producers like Wilmar to sell a specified quantity of biodiesel in Indonesia at a market-established price.  IDM at 11–16 (P.R. 303).  Commerce also found a PMS with respect to Wilmar's crude palm oil ("CPO") costs based on the GOI's export tax and export levy on CPO, which purportedly lowered the cost of CPO in Indonesia.  *Id.* at 21–24.

The bright line rules articulated in *Nexteel* apply with equal force to this appeal and demonstrate that Commerce's sales-based PMS finding in the *Final Determination* lacks support in law and fact.  To support its sales-based PMS finding, Commerce erroneously determined that the GOI's mere "intervention in Indonesia's biodiesel market," through its administration of the PSO program, was "sufficient" to establish a PMS with respect to biodiesel sales.  *Id.* at 12.  That conclusion runs headlong into *Nexteel* in two ways.

First, Commerce's determination is inconsistent with the holding that the mere presence of the government in the market is not enough to establish a PMS.  *Nexteel*, 2022 WL 728512, at *4– 5 (holding that the government's subsidization of an input did not, alone, demonstrate a PMS without separate proof that such intervention "affect{ed} the price of the input").  That legal error alone provides grounds for remand.

Second, Commerce's conclusion overlooks that a PMS exists only when substantial evidence demonstrates that the prices at issue "are not based on normal market forces or do not move with the rest of the market." *Id.* at *4. Commerce verified that the GOI based all of the components of the biodiesel sales price under the PSO program on either market indices or public auctions open to the entire Indonesian market. Wilmar Sales Verification Report at 5-6 (P.R. 265). Commerce likewise confirmed that non-PSO program sales in Indonesia were open to negotiation and free of government intervention. *Id.* at 6. Substantial evidence therefore firmly demonstrates that biodiesel sales in Indonesia were established by market-based factors, such that Commerce should not have rejected Wilmar's reported home market biodiesel sales on the basis of a PMS. The Court should follow the reasoning in *Nexteel* and hold that Commerce's finding of a sales-based PMS is not supported by substantial evidence. *See Nexteel*, 2022 WL 728512, at *7 (observing Commerce previously determined that government-set electricity prices were based on market principles and that foreign producers did not benefit from government involvement in electricity pricing, but that "Commerce has not justified its departure from those findings").

*Nexteel* likewise leaves no doubt that the Court should reject Commerce's finding of a cost-based PMS. In the *Final Determination*, Commerce provided no factual support whatsoever for its assertion that the export tax and export levy on CPO "impeded" external trade for CPO. IDM at 22 (P.R. 303). Apart from that fundamental error, Commerce cited a general trade policy report, which did not address the CPO export tax at issue, for the proposition that the CPO export tax and export levy "*can* be used to reduce the domestic price of primary products in order to guarantee supply of intermediate inputs at below world market prices for domestic processing industries." *Id.* (emphasis added). Whether export measures "can" have an effect on input prices does not, however, demonstrate that such costs were distorted at all or distorted to such a degree "that they

are not based on normal market forces or do not move with the rest of the market." *Nexteel*, 2022 WL 728512, at *4. For that reason, Commerce's reliance on a comparison between CPO prices in Indonesia and world market prices for CPO simply does not demonstrate that the export tax and export levy on CPO had an *effect* on CPO prices in Indonesia, such that the GOI's export measures "affect{ed} the price of the input so that it does 'not accurately reflect the cost of production in the ordinary course of trade.'" *Id.* at *5 (quoting 19 U.S.C. § 1677b(e)). Indeed, at most, such a comparison between CPO prices in Indonesia and world market prices for CPO reveals nothing more than "{a}n ongoing global phenomenon" related to CPO prices that does "not alone constitute a deviation from the 'ordinary course of trade'" for purposes of a cost-based PMS. *Id.* at *3.

* * *

For all of these reasons, the Court should follow *Nexteel* and remand this proceeding to Commerce. Since the Court held oral argument on November 19, 2019 (ECF 64), 857 days have passed without a decision in the appeal. Undersigned counsel stand ready to answer any questions the Court may have regarding this Notice or their briefs filed in this appeal.

Respectfully submitted,

Bernd G. Janzen
Devin S. Sikes
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel for Plaintiffs Wilmar Trading Pte Ltd,
PT Wilmar Bioenergi Indonesia, and
Wilmar Oleo North America LLC*

Dated: March 25, 2022