# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| WILMAR TRADING PTE LTD., PT WILMAR BIOENERGI INDONESIA, and WILMAR OLEO NORTH AMERICA LLC, <br><br>    *Plaintiffs*, <br><br>and <br><br>P.T. MUSIM MAS and GOVERNMENT OF THE REPUBLIC OF INDONESIA, <br><br>    *Consolidated Plaintiffs*, <br><br>v. <br><br>UNITED STATES, <br><br>    *Defendant*, <br><br>and <br><br>NATIONAL BIODIESEL BOARD FAIR TRADE COALITION, <br><br>    *Defendant-Intervenor*. | Consol. Court. No. 18-00121 |

### COMMENTS IN SUPPORT OF COMMERCE'S SECOND FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

                Myles S. Getlan
                Thomas M. Beline
                Chase J. Dunn
                CASSIDY LEVY KENT (USA) LLP
                900 19th Street, N.W., Suite 400
                Washington, D.C. 20006
                (202) 567-2300

April 11, 2024

**TABLE OF CONTENTS**

Page

INTRODUCTION AND ARGUMENT ........................................................................................1

**Table of Authorities**

**Page(s)**

**Statutes**

19 U.S.C. § 1677f-1(f)(1) ................................................................................................................2

**Court Decisions**

*Vicentin S.A.I.C. v. United States*, 42 F. 4th 1372 (Fed. Cir. 2022) ................................................3

**Administrative Determinations**

*Biodiesel from Indonesia: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 8,835 (Mar. 1, 2018) ........................................................................................................................1

**INTRODUCTION AND ARGUMENT**

The National Biodiesel Board Fair Trade Coalition ("the Coalition" or "Defendant-Intervenors") timely submits these comments in support of the Department of Commerce's ("Commerce") *Second Remand Redetermination*, submitted to the Court on March 12, 2024. *See* "Final Results of Redetermination Pursuant to Court Remand," Consol. Court No. 18-00121; Slip Op. 23-165 (CIT November 21, 2023) ("*Second Remand Redetermination*"); *see also Wilmar Trading PTE Ltd., et al. v. United States*, CIT Slip Op. 23-165, Consol. Court No. 18-00121 (Nov. 21, 2023) ("*Second Remand Order*"); *Biodiesel from Indonesia: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 8,835 (Mar. 1, 2018) ("*Final Determination*") (P.R. 309).

In its *Second Remand Order*, the Court found that Commerce's first remand redetermination had not "sufficiently explained how any distortion created by the 2015 Export Levy has not already been remedied by the countervailing duties imposed in *Wilmar CVD* that were based on the same export tax regime." *Second Remand Order* at 30. Specifically, the Court held that Commerce did not

> explain{} why it cannot adjust its chosen method to account for the countervailing duty remedy when constructing normal value. Commerce may have a reason to believe that the countervailing duties imposed in *Wilmar CVD* do not remedy the distortion of crude palm oil prices in the Indonesian market for purposes of the antidumping duty investigation; however, if Commerce has such a reason, it must explain it.

*Id.* at 31. Therefore, the Court held that Commerce "must either reconsider its decision to disregard Indonesian crude palm oil prices when constructing normal value for Wilmar or explain why doing so does not result in a double remedy." *Id.* at 32.

In its *Second Remand Redetermination*, Commerce correctly notes that a "pass-through" analysis is not required with respect to countervailing domestic subsidies, and by requiring such

1

an analysis the Court has placed an unreasonable evidentiary burden on Commerce that risks undermining the relief to which domestic parties are entitled by law. *Second Remand Redetermination* at 11- 13. Nevertheless, the Coalition supports Commerce's "pass-through" analysis, conducted under protest. *Id.* at 7. Because there is no established methodology for conducting such an analysis with respect to domestic subsidies, Commerce reasonably utilized the methodology it has developed in implementing 19 U.S.C. § 1677f-1(f)(1), the only section of the Tariff Act of 1930, as amended, that contemplates adjusting antidumping duties to account for countervailable domestic subsidies. *Id.* at 7-11. Moreover, in relying on verified record evidence from the respondents and the U.S. International Trade Commission's preliminary determination in the underlying investigation, Commerce reasonably concludes that the Government of Indonesia's ("GOI") domestic subsidy program on crude palm oil ("CPO") did not measurably reduce the respondent's U.S. prices of Indonesian biodiesel during the POI. *Id.* at 9. Specifically, Commerce explains "the record shows that U.S. and foreign producers base the price of biodiesel sold in the United States on the price of Ultra Low Sulfur Diesel (ULSD) futures contracts traded on the New York Mercantile Exchange (NYMEX)…{and} the record {also} demonstrates that Wilmar prices its biodiesel sold in the United States based on the price of ULSD futures contracts," rather than based on its costs of production, including the cost of crude palm oil. *Id.* Therefore, Commerce reasonably continued to adjust respondent's normal value to account for the particular market situation ("PMS") in Indonesia.

   Furthermore, Commerce correctly notes that "a similar pass-through analysis was conducted on remand in the biodiesel from Argentina proceeding." *Id.* at 10. In that case, Commerce also conducted a pass-through analysis, under protest, to determine whether the

2

Government of Argentina's domestic subsidy on soybeans reduced U.S. prices during the period of investigation, which may have resulted in a double remedy. Commerce determined based on record evidence that the domestic subsidy at issue did not reduce U.S. prices and therefore continued to adjust the respondent's normal value to account for the PMS in Argentina. The Court of Appeals for the Federal Circuit affirmed Commerce's use of a pass-through analysis and its finding that the PMS adjustment did not result in double remedy. *See Vicentin S.A.I.C. v. United States*, 42 F.4th 1372 (Fed. Cir. 2022). The Federal Circuit's decision in *Vicentin S.A.I.C.* provides further support for Commerce's use of a pass-through analysis to comply with this Court's remand order.

In sum, Commerce addressed the Court's concerns outlined in the *Second Remand Order* by using an analytical framework (*i.e.*, the pass-through analysis) that the Federal Circuit affirmed in similar circumstances, and in supporting its finding with substantial evidence that the GOI's domestic subsidy on CPO did not reduce respondent's U.S. prices for biodiesel, and finding therefore that a PMS adjustment to normal value did not result in a double remedy. Moreover, Plaintiffs Wilmar Trading Pte Ltd., PT Wilmar Bioenergi Indonesia, and Wilmar Oleo North America LLC ("Plaintiffs") have notified the Court that "Plaintiffs will not submit comments in opposition to the U.S. Department of Commerce's Second Final Results of Redetermination Pursuant to Court Remand." ECF 127. Accordingly, the Court should affirm Commerce's *Second Remand Results* in their entirety because they are supported by substantial evidence and otherwise in accordance with law and are not opposed by any party.

Respectfully submitted,

/s/ Myles S. Getlan

Myles S. Getlan
Thomas M. Beline
Chase J. Dunn

Date: April 11, 2024

**Certificate of Compliance with Chambers Procedures 2(B)**

The undersigned hereby certifies that the forgoing submission of "Comments in Support of Commerce's Second Final Results of Redetermination Pursuant to Court Remand" filed on April 11, 2024, contains 856 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 10,000 word count limitation set forth in rule 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade.

BY: /s/ Myles S. Getlan
Myles S. Getlan